IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDNERNESS ALLIANCE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES BUREAU OF LAND MANAGEMENT, and CHRISTINA PRICE,<br><br>　　　　　　Defendants. | **ORDER AND MEMORANDUM DECISION ON MOTIONS TO INTERVENE**<br><br>Case No. 2:23-cv-00804-TC-DBP<br><br>District Judge Tena Campbell<br>Chief Magistrate Judge Dustin B. Pead |

Before the court are Anschutz Exploration Corporation's (AEC) and the State of Utah's motions to intervene. (See ECF Nos. 25 & 38.) The motions are unopposed. For the reasons stated below, the court grants the motions to intervene.

## BACKGROUND

In this lawsuit, Plaintiff Southern Utah Wilderness Alliance (SUWA) argues that in 2018 and 2019, Defendant United States Bureau of Land Management (BLM) made four separate decisions to offer, sell, and issue for development 145 oil and gas leases covering approximately 215,325 acres of public lands in Utah without fully and adequately analyzing the environmental and public health impacts of those decisions. (Am. Compl., ECF No. 16 at ¶ 1.) SUWA alleges that BLM's failure to consider the environmental and public health impacts of its decisions violated the National Environmental Policy Act (NEPA) and the Endangered Species Act (ESA). (Id. ¶¶ 158–90.) SUWA is a nonprofit organization dedicated to the preservation of wilderness throughout Utah and the management of wilderness lands in their natural state. (Id. ¶ 18.) BLM,

an agency under the United States Department of the Interior (DOI), is responsible for managing publicly-owned lands and minerals in accordance with federal law. (Id. ¶ 20.)

### I. Motions to Intervene

AEC, an independent oil-and-gas exploration and development company operating in Colorado, Wyoming and Utah (see Decl. Joseph DeDominic, ECF No. 25-1 at ¶ 2), and Utah have each moved to intervene in this dispute between SUWA and Defendants DOI, BLM and Christina Price, in her official capacity as Deputy State Director for the Division of Lands and Minerals of BLM's Utah Office (together, Federal Defendants).

#### A. AEC

AEC moves the court to allow its intervention in this lawsuit because AEC holds 54 of the 145 leases SUWA challenges in this case. (ECF No. 25 at 8; see AEC's Oil and Gas Leases, Ex. A to DeDominic Decl., ECF No. 25-1 at 4.) "AEC holds 26 of the challenged leases from the December 2018 lease sale, and 28 of the challenged leases from the March 2019 lease sale." (ECF No. 25-1 at ¶ 6.)[1] AEC also asserts it "invested substantial resources, including millions of dollars, to secure these Utah leases, and to prepare for and conduct drilling and production operations once BLM renders a final decision." (ECF No. 25-1 at ¶ 10.)

#### B. Utah

Utah argues that it has regulatory and economic interests in the challenged leases that entitle its intervention. (ECF No. 38 at 4.) "The State takes part in the issuance of every federal oil and gas lease within Utah, including those complained about in this case." (Id. at 5.) The

---

[1] AEC has not engaged in any activity on its leases. (ECF No. 25-1 at ¶¶ 7–8 (explaining that BLM granted AEC's application to suspend operations and production on the leases because of uncertainty of the leases caused by the filing of a different lawsuit); see also BLM Letter dated Aug. 4, 2023, Ex. B to DeDominic Decl., ECF No. 25-1 at 5–8.)

State participates in that process at several points—once the United States prepares environmental assessments of proposed lease parcels, when the leasing stage progresses to notification of which parcels BLM will include in the sale, and after the leasing sale concludes—and the "State … will continue to provide regulatory oversight of all 145 of the oil and gas leases challenged by [SUWA]." (Id.)  Additionally, the "challenged leases represent a substantial potential revenue source" for Utah, and the leases "offer[] economic benefits to Utahns by generating employment opportunities and contributing to decreased energy costs." (Id. at 5–6.)

## DISCUSSION

Under Rule 24 of the Federal Rules of Civil Procedure, nonparties may intervene in legal disputes as a matter of right or permissively.  Fed. R. Civ. P. 24(a), (b).  Courts "must permit" intervention as a matter of right if "(1) the application is timely; (2) the applicant[s] claim[] an interest relating to the property or transaction which is the subject of the action; (3) the applicant[s'] interest may as a practical matter be impaired or impeded; and (4) the applicant[s'] interest is [not] adequately represented by existing parties."  Fed. R. Civ. P. 24(a); W. Energy All. v. Zinke, 877 F.3d 1157, 1164 (10th Cir. 2017) (citation omitted).  Alternatively, nonparty movants may intervene permissively if they "ha[ve] a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "In exercising its discretion to permit a party to [permissively] intervene, 'the court must [also] consider whether … intervention will unduly delay or prejudice the adjudication of the original parties' rights.'"  Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n, 787 F.3d 1068, 1074 (10th Cir. 2015) (quoting Fed. R. Civ. P. 24(b)(3)).  The Tenth Circuit takes a "liberal" approach to intervention and "favors the granting of motions to intervene."  Zinke, 877 F.3d at 1164 (citation omitted).

The court first addresses whether the movants may intervene in this case as a matter of right.

**I.      Timeliness**

"The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" Utah Ass'n of Cntys. v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting Sanguine, Ltd. v. U.S. Dep't of Interior, 736 F.2d 1416, 1418 (10th Cir. 1984)). "Federal courts should allow intervention where no one would be hurt and greater justice could be attained." Id. (citation omitted).

The motions to intervene are timely. First, this case is in the early stages of litigation. SUWA originally filed the case on November 3, 2023. (See Compl., ECF No. 1.) SUWA then filed an amended complaint on January 5, 2024. (See ECF No. 16.) Only an administrative appeal scheduling order has been entered in this case. (See Order dated Mar. 21, 2024, ECF No. 36); see also DUCiv-R 7-4(c) (explaining scheduling order requirements in an action seeking judicial review of a decision from an administrative agency). The parties have not filed dispositive motions.

Second, AEC and Utah filed their motions to intervene 2 and 3 months after SUWA filed its amended complaint. (See ECF No. 25 (filed Mar. 8, 2024); ECF No. 38 (filed Apr. 4, 2024).) See Zinke, 877 F.3d at 1164–65 (finding a timely motion to intervene that was filed "just over two months after the [plaintiffs] filed the complaint"); see also Clinton, 255 F.3d at 1251 (holding that a motion to intervene filed over 2 years after the complaints were filed was timely

4

because the "the case [was] far from ready for final disposition" and "no prejudice to plaintiffs flow[ed] from the length of time").

Furthermore, no existing party has argued that 1) it would be prejudiced if the court allows the movants to intervene or 2) unusual circumstances support denying intervention. (See Resps. to Mots. to Intervene, ECF Nos. 37 & 40.)

This factor supports intervention.

## II.     Interests in the Subject of the Lawsuit

Next, to intervene as of right, intervenors must have a claimed interest in the matter that is "direct, substantial, and legally protectable." Clinton, 255 F.3d at 1251 (citation omitted). "A protectable interest is one that 'would be impeded by the disposition of the action.'" Zinke, 877 F.3d at 1165 (quoting San Juan Cnty. v. United States, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc), abrogated on other grounds by Hollingsworth v. Perry, 570 U.S. 693 (2013)). Whether an intervenor has the requisite interest is a highly fact-specific determination. Clinton, 255 F.3d at 1251. "An interest in preventing an economic injury is certainly sufficient for intervention as of right." United States v. Albert Inv. Co., Inc., 585 F.3d 1386, 1398 (10th Cir. 2009).

As mentioned above, AEC and Utah assert several interests in the challenged leases. AEC holds 54 of the 145 leases. (See ECF No. 25-1 at 4.) AEC's leases are not only related "to the property or transaction that is the subject of [this] action[,]" WildEarth Guardians v. Nat'l Park Serv., 604 F.3d 1192, 1198 (10th Cir. 2010), "they are the property at issue here." (ECF No. 25 at 11.) This fact alone satisfies AEC's burden on this factor. But given the substantial resources AEC has devoted to securing the leases, the court finds that AEC has a clear interest in "preventing an economic injury." See Albert Inv. Co., 585 F.3d at 1398.

5

The court finds that Utah also has an interest in preventing economic injury. Not only are the challenged leases a substantial potential revenue source for the state, but Utah has submitted evidence showing that the leases offer other economic benefits to Utahns. (See ECF No. 38 at 6.)

Additionally, Utah has demonstrated its regulatory interests in this lawsuit. In its motion, Utah explained its significant "participat[ion] in the government's decision-making process at the administrative level[.]" WildEarth Guardians, 604 F.3d at 1199; (see also ECF No. 38 at 5.) In a different case, this court granted Utah's motion to intervene as of right because the state had asserted an interest in regulating the activity at issue (mining) in its borders and showed it "provide[d] assistance in the … lease application process [at issue]." See Wildearth Guardians v. Jewell, No. 2:16-cv-168, 2016 WL 4133533, at *4 (D. Utah Aug. 3, 2016). Similarly, Utah's interests in this case include regulating oil and gas leasing within its borders and participating in the regulatory process for oil and gas leases.

For these reasons, AEC and Utah assert interests sufficient to support intervention of right.

III.   **Impairing or Impeding the Claimed Interests**

To satisfy the next requirement of Rule 24(a)(2) of the Federal Rules of Civil Procedure, intervenors "must have an interest that could be adversely affected by the litigation." Kane Cnty. v. United States, 928 F.3d 877, 891 (10th Cir. 2019) (quoting San Juan Cnty., 503 F.3d at 1199). "This burden is minimal[,]" Clinton, 255 F.3d at 1253 (citation omitted), and may be "contingent upon the outcome of [ ] litigation[.]" Kane Cnty., 928 F.3d at 891 (quoting San Juan Cnty., 503 F.3d at 1203). In environmental cases, "[t]his factor is met … where the district court's decision would require the federal agency to engage in an additional round of administrative planning and

decision-making that itself might harm the movants' interests, even if they could participate in the subsequent decision-making." Zinke, 877 F.3d at 1167 (citing WildEarth Guardians, 604 F.3d at 1199).

In this lawsuit, SUWA requests that the court "[d]eclare unlawful and vacate the leasing decisions and accompanying NEPA analyses and documents at issue" and "[s]et aside and vacate all 145 leases at issue that were offered, sold, and/or issued at the aforementioned sales." (See ECF No. 16 at 59.) Should this occur, the 145 leases at issue could be vacated. "If [SUWA] … were to succeed in cancelling the leases, AEC's contractual and property interests would be destroyed, and its economic interests in developing and producing from these leases would be impaired." (ECF No. 25 at 13.) Furthermore, "[s]tate agencies would again need to spend substantial time and resources to comment and take part in the [leasing decision-making] process[.] … Overturning the challenged leases and lease sales will also stamp out revenue sources[.]" (ECF No. 38 at 7.)

The court finds that the movants' interests may be impaired by this case.

IV.   **Adequate Representation**

Finally, the movants must show that the presently named parties cannot adequately represent the movants' interests. Zinke, 877 F.3d at 1168. This burden is minimal. Id.; see also Clinton, 255 F.3d at 1254. The Tenth Circuit has held that the government cannot adequately represent the interests of a private intervenor and the interests of the public. Zinke, 877 F.3d at 1168 (citing WildEarth Guardians v. U.S. Forest Serv., 573 F.3d 992, 996 (10th Cir. 2009)); see also WildEarth Guardians, 604 F.3d at 1200. Courts do not assume "that the government agency's position will 'stay static or unaffected by unanticipated policy shifts.'" See Zinke, 877 F.3d at 1168 (quoting Clinton, 255 F.3d at 1256). "[T]he government's representation of the

7

public interest generally cannot be assumed to be identical to the … interest of a particular member of the public merely because both entities occupy the same posture in the litigation." Clinton, 255 F.3d at 1255–56.

The court is persuaded that the Federal Defendants cannot adequately represent the interests of AEC and Utah.  Not only might the interests of AEC, a private intervenor, and the federal government conflict, but AEC "is better positioned than Federal Defendants to explain precisely how AEC would be harmed and how its business would be disrupted were [SUWA] … to prevail."  (ECF No. 25 at 14–15.)  The interests of Utah and the federal government also differ: "The State's interests in regulating oil and gas operations and protecting State revenue and employment opportunities differ from the [F]ederal [D]efendants' interest in defending its NEPA analysis."  (ECF No. 38 at 7.)  Utah also has interests in "the long-term continuation and promotion of oil and gas leasing in Utah [that] may … not align with the United States' policy interests."  (Id. at 7–8.)  Furthermore, Utah has special knowledge of the oil and gas leasing process in Utah and is "narrowly concerned with the interests of Utahns."  (Id. at 8.)  Notably, the Federal Defendants have not taken a position on the motions to intervene, suggesting that they do not intend to defend the intervenors' special interests.  See Clinton, 255 F.3d at 1256 ("[The federal government's] silence on any intent to defend the [intervenors'] special interests is deafening." (citation omitted)).

The court's review of the four factors supports granting the movants' motions to intervene as of right in this action.  Accordingly, the court need not discuss whether the movants satisfy the requirements of permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure.

**ORDER**

For the reasons stated above, the court ORDERS as follows:

1. AEC's motion to intervene (ECF No. 25) is GRANTED.

2. Utah's motion to intervene (ECF No. 38) is GRANTED.

DATED this 10th day of May, 2024.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge