Mark D. Gibson (*pro hac vice*)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Telephone: (303) 473-4837
mdgibson@hollandhart.com

Andrew C. Lillie (*pro hac vice*)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8121
aclillie@hollandhart.com

Shawn T. Welch (7113)
Andrew P. Revelle (18518)
HOLLAND & HART LLP
222 South Main, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
stwelch@hollandhart.com
aprevelle@hollandhart.com

*Attorneys for Intervenor–Defendant Anschutz Exploration Corporation*

Kathy A.F. Davis (4022)
Roger R. Fairbanks (3792)
Assistant Attorneys General
Utah Attorney General's Office
Sean D. Reyes (7969)
Utah Attorney General
1594 West North Temple, Suite 300
Salt Lake City, Utah 84116
kathydavis@agutah.gov
rfairbanks@agutah.gov

*Attorneys for Intervenor–Defendant State of Utah*

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>         Plaintiff, | **INTERVENOR–DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTIONS TO DISMISS** |

|  |  |
|---|---|
| v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR et al.,<br><br>   Defendants,<br><br>and,<br><br>ANSCHUTZ EXPLORATION CORPORATION and STATE OF UTAH,<br><br>   Intervenor–Defendants. | Case No. 2:23-cv-00804-TC-DBP<br><br>Judge Tena Campbell<br><br>Chief Magistrate Judge Dustin B. Pead |

Plaintiff Southern Utah Wilderness Alliance argues that this case is ripe because, as a general rule, issuing an oil-and-gas lease counts as final agency action. SUWA also argues that it has standing, not because the allegations in its complaint are sufficient, but because the allegations in Ray Bloxham's new declaration supposedly are. Both arguments miss the mark.

On ripeness, SUWA's arguments fail to address the elephant in the room: the very existence and scope of the leases SUWA wants to eviscerate are uncertain based on the Bureau of Land Management's ongoing supplemental National Environmental Policy Act (NEPA) analysis.[1] SUWA's one-note refrain that issuing an oil-and-gas lease is, generally, final agency action does

---

[1] Nearly two years ago, BLM issued its draft Supplemental Environmental Assessment. *See* Bureau of Land Mgmt., U.S. Dep't of Interior, *Supplemental Environmental Assessment Analysis for Greenhouse Gas Emissions Related to Oil and Gas Leasing in Seven States from February 2015 to December 2020* (Nov. 2022), https://eplanning.blm.gov/eplanning-ui/project/2022218/510 ("Supplemental EA").

not answer the specific question presented by these facts: What happens when BLM renders a final decision to issue leases but then undertakes supplemental NEPA analysis to reconsider that decision and, based on that analysis, may cancel or modify the leases? Caselaw teaches that, as a practical matter, no final agency action exists in this scenario. And prudential considerations only confirm as much. This case is not ripe for review.

On standing, nothing in the Bloxham declaration cures the problem that his alleged future injuries remain too hypothetical and conjectural to support standing. Again, depending on the Supplemental EA, BLM may cancel or modify the leases that Bloxham alleges will, at some point in the future, be developed in ways that adversely affect his interests. Bloxham's purported future injuries from oil-and-gas development that has not yet occurred—and may never occur—are thus conjectural and hypothetical because they depend on BLM's upholding every single lease that SUWA challenges here. But no one knows what BLM will decide. It could outright cancel the leases, alter their boundaries, or place restrictions on them—all in ways that could avoid harming the interests SUWA seeks to protect. Until BLM's leasing decisions move from the hypothetical to the concrete in ways that threaten SUWA's interests, SUWA lacks standing.

## ARGUMENT

### I. SUWA's claims are not ripe, because BLM is currently reconsidering the lease sales and leases that SUWA challenges.

The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements … and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S.

136, 148–49 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "[B]oth the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" guide this analysis. *Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017) (quoting *Abbott Labs.*, 387 U.S. at 149). Because BLM's decision-making process is ongoing and it may cancel or modify these leases, this case is not ripe.

> **A.  This case is not fit for review, because no final agency action exists when, as here, an agency makes a decision but then undertakes additional analysis to reconsider that decision.**

On the fitness-for-review prong, courts consider whether the issue is purely legal, whether the agency decision in dispute was final, whether the agency action has or will have an immediate impact on the plaintiff, whether further factual development would advance the courts' ability to deal with the issues, and whether judicial intervention would interfere with further administrative action. *Id.* at 1141–42 & n.2.

Final agency action is "[a] vital aspect of the requirement that issues be fit for review." *Park Lake Res. v. U.S. Dep't of Agric.*, 197 F.3d 448, 450 (10th Cir. 1999). "Agency action is final when it marks the consummation of the agency's decision[-]making process and is one by which rights or obligations have been determined, or from which legal consequences will flow." *Farrell-Cooper Mining Co. v. U.S. Dep't of Interior*, 728 F.3d 1229, 1235 (10th Cir. 2013) (internal quotation marks omitted). Finality is interpreted "in a pragmatic way." *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149).

SUWA stresses that, as a general rule, when BLM issues an oil-and-gas lease, that counts as final agency action. Resp. at 5, ECF No. 64. But that general rule ignores both the specific facts of this case and the admonition that finality be interpreted pragmatically.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Farrell-Cooper Mining*, 728 F.3d at 1238 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Refining that rule, courts have consistently held that when, as here, an agency has reached a decision but then undertakes additional analysis to reconsider that decision, no final agency action exists.

That is this case. BLM is currently conducting additional NEPA analysis on the lease sales and leasing decisions that SUWA seeks to wipe out.

Take *Wyoming v. Zinke*, for example, where the Tenth Circuit reasoned that, even though BLM had initially reached a final decision by issuing a regulation, BLM then undertook additional analysis to consider rescinding the regulation. 871 F.3d at 1142. Under those facts, the court determined that a challenge to the regulation was not ripe. *Id.* (noting that "whether all or part of the [agency action might] be rescinded [was] now an open question"). It observed that "proceeding to address [the issue] when the BLM has now commenced rescinding that same regulation appears to be a very wasteful use of limited judicial resources." *Id.* That observation applies with equal force here. Proceeding to address SUWA's challenges to the lease sales and leases when BLM is reconsidering those decisions in the Supplemental EA would risk wasting this Court's and the parties' time and resources.

The Tenth Circuit applied the same rule in *Farrell-Cooper Mining Co. v. United States Department of Interior*, concluding that no final agency action existed "[b]ecause the agency actions

challenged … [were] subject to ongoing administrative review," and, based on that review, the agency could "vacate each action." 728 F.3d at 1235. Judicial intervention under those circumstances, the court observed, could "disrupt the administrative process." *Id.* (quoting *Bell v. New Jersey*, 461 U.S. 773, 779 (1983)). The same is true here.[2]

Trying to distance this case from precedent, SUWA tries to distinguish two cases cited in AEC's motion: *Los Alamos Study Group v. U.S. Department of Energy*, 794 F. Supp. 2d 1216 (D.N.M. 2011), and *Gordon v. Norton*, 322 F.3d 1213 (10th Cir. 2003). Resp. at 8–10. But those cases illustrate why this case is not fit for review.

In *Los Alamos*, the plaintiff challenged the agency's NEPA analysis for a nuclear facility's construction and operation. 794 F. Supp. 2d at 1219–20. The agency had issued a final environmental impact statement ("EIS") and record of decision ("ROD") in 2003. *Id.* at 1221. Based on new developments, the plaintiff wanted the agency to prepare an updated EIS. *Id.* But the agency had already begun an analysis to determine if an updated EIS should be prepared, and the plaintiff knew this. *Id.* Before the agency had completed this analysis, the plaintiff filed its complaint. *Id.* After the complaint was filed, the agency also decided—on its own—to prepare a Supplemental EIS. *Id.* The agency's Supplemental EIS was thus still pending during the case, just like BLM's Supplemental EA is still pending in this case. *See id.* at 1221–22.

---

[2] SUWA cites *Farrell-Cooper Mining Co. v. United States Department of Interior*, 864 F.3d 1105, 11,4 (10th Cir. 2017), for the proposition that "[t]he consummation of the decision[-]making process occurs when 'the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." Resp. at 5 (emphasis in original). But here, the initial decisionmaker (BLM) has not arrived at a definitive position on the leases; BLM is actively reconsidering them, and thus SUWA has not yet experienced any actual, concrete injury.

The court concluded that while the Supplemental EIS was pending, there was no ripe final agency action for it to review, because it was unclear what form that analysis would ultimately take and what effect it might have on the case. *Id.* at 1227. In other words, "if there is still a real possibility that the agency will conduct further environmental analysis, the NEPA claim is not yet ripe." *Id.* The court noted that the project was "still in some state of flux," and there had not yet been an "irreversible [or] irretrievable commitment to a particular plan." *Id.* at 1228, 1230; *accord Wyo. Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 10 (D.D.C. 2001) ("[T]he leases are simply subject to too many contingencies, uncertainties, conditions and restrictions to be accurately described as either the consummation of the process or as determining rights and obligations."). Just as in *Los Alamos*, not only is there "a real possibility that the agency will conduct further environmental analysis" here, but in fact such an analysis—BLM's Supplemental EA—is currently pending. So there is no final agency action because the challenged lease sales and leases are still in a state of flux given that it is unclear what decision BLM will ultimately reach based on the Supplemental EA and how that new decision might affect this case.

*Gordon* similarly stands for the proposition that there is no final agency action when, as here, the agency is still formulating a definitive course of action by continuing to gather information during its decision-making process. 322 F.3d 1213, 1220–22 (10th Cir. 2003). In *Gordon*, the plaintiffs challenged the Fish and Wildlife Service's control of gray wolves. *Id.* at 1215. The case focused on whether the agency had formally interpreted its regulations governing wolves that prey on livestock. *Id.* at 1220. Because the agency "was still in the decision-making process and was continuing to gather information on wolf activity and depredations," there was no final agency action, as it had not yet finalized its interpretation of those regulations, much like BLM has not yet

finalized its decision to cancel, modify, or uphold the lease sales and leases in this case. *Id.* at 1220–21. The court concluded that judicial intervention would only undermine the agency's ongoing administrative efforts. *Id.* at 1222. Same here.

The rule that an agency decision under reconsideration is not ripe aligns with the purpose behind the ripeness doctrine. Ripeness is designed "to avoid extended periods of unnecessary litigation" and to "prevent the adjudication of conjectural scenarios." *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 244 (10th Cir. 1991). As one court observed, when an unripe case challenges an agency action that may not occur, "motions would be filed and hearings held, and all parties and the court would expend a great deal of time and money pursuing a determination of the propriety of the [agency action]. All of this *would* occur, and the [agency action] may never occur." *Id.*

This risk of waste is real in this case. Assume the case moves forward. The parties and the Court devote time and resources to the administrative record, drafting summary-judgment briefs, and issuing a final decision. And assume that SUWA prevails, the Court remands to BLM with instructions to conduct further analysis on the challenged lease sales and leases, and BLM dutifully complies with that directive. But then BLM issues its final Supplemental EA and elects to cancel the challenged lease sales and leases. In that scenario, all that time and energy devoted to the record, briefing, opinion-writing, and court-ordered supplemental analysis on remand will have represented nothing but a massive waste of the parties' and the Court's resources. The ripeness doctrine exists to prevent that waste.

  **B. SUWA faces no hardship from delayed review.**

As for hardship of withholding review now, SUWA fails to show any. It faces no direct or immediate impact from delaying review. *See Wyoming*, 871 F.3d at 1143. "Any harm to SUWA's

members' enjoyment of the lands at issue 'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.' Until [AEC] receives either drilling permits on the suspended leases …, no oil and gas development will occur." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1160 (10th Cir. 2013) (quoting *Texas*, 523 U.S. at 300). "There is simply too much uncertainty as to when and what type of drilling, if any, will occur on the … contested leases. SUWA 'will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain ….'" *Id.* at 1160 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998)).

SUWA emphasizes that BLM is processing some applications for permits to drill ("APDs") that AEC has submitted to potentially develop some of the challenged leases, and that BLM has approved APDs for other leases involved in the Supplemental EA. Resp. at 5–8. But delaying review of the challenged lease sales and leases here will impose no hardship on SUWA. After all, if and when BLM approves a specific drilling permit, that would be a discrete final agency action that SUWA could seek to challenge, so "it will suffer no hardship from this delayed review." *Palma*, 707 F.3d at 1160; *see also Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008) ("Judicial review at this stage would inappropriately intrude upon an ongoing and incomplete agency decision-making process. Postponement of any decision here would not serve as a hardship to [the plaintiff] given that a final decision in [its] favor … may render this action unnecessary.").

    C.    **Prudential considerations confirm that this case is not ripe.**

Even assuming the challenged lease sales and leases amount to final agency actions, given the uncertainty looming over those lease sales and leases stemming from the Supplemental EA, "further factual development" in the form of BLM's final determination in the Supplemental EA

"would 'significantly advance [this Court's] ability to deal with the legal issues presented.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003) (although final agency action existed, ruling case unripe, reasoning that "judicial resolution of the question presented here should await a concrete dispute"). "[D]elaying review of [SUWA's] claim[s] prevents time-consuming judicial consideration of an alleged injury that may never come to pass." *San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1049 (10th Cir. 2011); *see also Nat. Res. Def. Council, Inc. v. Thomas*, 845 F.2d 1088, 1092–93 (D.C. Cir. 1988) (although final agency action existed, the case remained unripe for review because of pragmatic concerns (e.g., agency's interest in crystallizing its action before being subject to judicial review; court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting)); *In re Aiken County*, 645 F.3d 428, 434 (D.C. Cir. 2011) ("[I]f we do not decide a case prematurely, we may never need to decide it.…'[W]hen an agency decision may never have its effects felt in a concrete way by the challenging parties, the prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well.'" (citation omitted)); *City of Fall River v. FERC*, 507 F.3d 1, 6–7 (1st Cir. 2007) (unripe because the proposed project may never go forward, and plaintiffs retained the opportunity to challenge the action later). These prudential concerns about avoiding judicial intervention when agency decision-making is ongoing confirm that this case is not yet ripe for review.

## II. SUWA lacks standing because the uncertainty created by the Supplemental EA renders its alleged future injuries too hypothetical and conjectural.

As SUWA points out, "a party's Article III standing is established at the time its lawsuit is filed, not some unidentified later date." Resp. at 14 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *Palma*, 707 F.3d at 1153). But that rule helps AEC, not SUWA. When SUWA filed

suit, its alleged future injuries from oil-and-gas development on the challenged leases was—and remains—too conjectural and hypothetical, because no one knows whether these leases will continue to exist after BLM completes the Supplemental EA. SUWA's alleged injury depends on oil-and-gas development that has not yet occurred and that rests on SUWA's conjecture that BLM will uphold all the challenged lease sales and leases after finalizing the Supplemental EA, rather than modifying or canceling some or all of those leases.

But until BLM issues its final Supplemental EA, SUWA's alleged future injuries are dubious and indefinite. For standing, "the injury complained of [must] be, if not actual, then at least *imminent*." *Lujan*, 504 U.S. at 564 n.2. The imminence requirement "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Id.* In other words, the injury must be "*certainly* impending." *Id.* When "the plaintiff alleges only an injury at some indefinite future time," imminence is "stretched beyond the breaking point." *Id.* When, as here, a plaintiff alleges potential *future* injuries, "the injury [must] proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Id.* (concluding that plaintiffs could not rely on a procedural right without identifying a concrete interest at stake).

That rule captures this case. There has been no actual harm, and any future harm depends on layer upon layer of contingency—future oil-and-gas development depends on BLM upholding the existing leases, on BLM granting an APD, and on BLM authorizing surface-disturbing activities on a specific lease tract. Under bedrock standing principles set down by the Supreme Court, SUWA's alleged future injuries from oil-and-gas development occurring at some uncertain point

in the future on leases that may or may not even exist depending on the Supplemental EA is simply too hypothetical and conjectural at this point to create standing.

## CONCLUSION

The Court should dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1).

Respectfully submitted,

/s/ Mark D. Gibson
Mark D. Gibson
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Phone: (303) 473-4837
Email: mdgibson@hollandhart.com

Andrew C. Lillie
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80302
Phone: (303) 295-8121
Email: aclillie@hollandhart.com

Shawn T. Welch
Andrew P. Revelle
HOLLAND & HART LLP
222 South Main, Suite 2200
Salt Lake City, UT 84101
Phone: (801) 799-5800
Email: stwelch@hollandhart.com
      aprevelle@hollandhart.com

*Attorneys for Intervenor–Defendant Anschutz Exploration Corporation*

/s/ Roger Fairbanks
Kathy A.F. Davis
Roger Fairbanks
UTAH ATTORNEY GENERAL'S OFFICE

*Attorneys for Intervenor–Defendant State of Utah*

## WORD-LIMIT CERTIFICATION

I certify that this document contains 3,045 words and thus complies with the 3,100-word limit for reply briefs set out in Local Civil Rule 7-1(a)(ii).

/s/ Mark D. Gibson
Mark D. Gibson