Stephen H.M. Bloch (UT #7813)
Landon Newell (UT #14738)
Hanna Larsen (UT #18458)
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
(801) 486-3161
steve@suwa.org
landon@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF THE INTERIOR** *et al.*, <br><br> Defendants, <br><br> and, <br><br> **ANSCHUTZ EXPLORATION CORPORATION** and **STATE OF UTAH**, <br><br> Intervenor-Defendants. | **PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND MEMORANDUM IN SUPPORT** <br><br> Case No. 2:23-cv-00804-TC <br><br> Judge Tena Campbell <br><br> **HEARING REQUESTED** |

Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(6), Plaintiff Southern Utah Wilderness Alliance ("SUWA") respectfully moves this Court to set aside its dismissal of this case as not ripe for judicial review.

On February 4, 2025, the Court issued an Order and Memorandum Decision (ECF No. 73) in the above-captioned matter ("Dismissal Order") dismissing SUWA's challenge to four oil and gas lease sales from 2018 and 2019, wherein the Bureau of Land Management ("BLM") issued 145 oil and gas leases on public lands in eastern Utah. The Court dismissed the case after concluding that SUWA's case was not ripe due to a lack of final agency action.

In reaching its decision the Court relied heavily on two factual determinations: (1) that all of the leases at issue are suspended, and (2) there are no approved drilling permits on any of the leases. *See, e.g.*, Dismissal Order at 15 ("the BLM leases are currently—and have been for nearly three years—suspended"); *id.* at 18 ("It is undisputed that BLM has not yet issued any drilling permits."). As explained below, each of these crucial factual determinations are inaccurate. As a result, the Court's Dismissal Order is premised on a materially erroneous understanding of the facts of the case. Therefore, SUWA respectfully requests that the Court amend its Dismissal Order and conclude that SUWA's claims are ripe for judicial review.

## BACKGROUND

### I. Many of the Challenged Leases are Not Suspended

SUWA brought this action to challenge four oil and gas lease sales conducted by BLM in 2018 and 2019 that resulted in the sale and issuance of 145 oil and gas leases in eastern Utah. *See* Dismissal Order at 4. Of those 145 leases, 64 are now held by Intervenor-Defendant Anschutz Exploration Corporation ("AEC"). *See generally* Ex. 1 (serial register page for each challenged lease which indicate, among other things, the current status of the lease (*e.g.*, authorized, closed

2

and whether the lease is suspended).[1] SUWA argued that BLM's leasing decisions violated the National Environmental Policy Act ("NEPA") and the Endangered Species Act. Dismissal Order at 4.

The following table summarizes the BLM's information provided in Exhibit 1 which shows that many of the subject leases are <u>not</u> suspended, including at least eleven leases held by AEC.[2]

| Authorized Leases (suspended) | Authorized Leases (not suspended) | Closed Leases[3] | "Interim" Leases[4] | Authorized Leases subject to <u>approved</u> drilling permits[5] |
|---|---|---|---|---|
| 53 | 46 | 45 | 1 | 2 |

AEC filed a Motion to Dismiss (ECF No. 42) to which SUWA filed a Response (ECF No. 64). In its Response and at the subsequent hearing on the Motion to Dismiss, SUWA explained that not all of the leases at issue in this case were suspended and that, even for the suspended leases, AEC could still seek and receive drilling approval (and in fact was actively

---

[1] In its Motion to Dismiss and at the Hearing on January 16, 2025, counsel for AEC inaccurately represented that the company held 54 of the challenged leases. *See* AEC Mot. to Dismiss at 1 (ECF No. 42); Hr'g Tr. 4:8 – 4:9 (Jan. 16, 2025); *see also* Dismissal Order at 4. To the contrary, Exhibit 1 demonstrates that as of the date of the hearing (and as of the date of this filing) AEC holds 64 of the challenged leases. *See* Ex. 1 at PDF pg. 2.

[2] The eleven <u>unsuspended</u> AEC leases are: UTU-93686, UTU-93669, UTU-93687, UTU-93688, UTU-93929, UTU-93931, UTU-93935, UTU-93936, UTU-93937, UTU-93938, and UTU-93939. Notably, these leases were already unsuspended when AEC filed its Motion to Dismiss and when AEC argued that all of its leases were suspended at the January 16, 2025 hearing. The leases remain unsuspended today.

[3] Forty-five leases have since been terminated for reasons unrelated to this litigation or the pending supplemental NEPA analysis. For instance, a lease automatically terminates by operation of law if a lessee does not pay its annual rentals on time. *See* 43 C.F.R. § 3103.22.

[4] One lease, UTU-94450, is listed as "interim," which, to the best of SUWA's knowledge, reflects the fact that BLM is in the process of terminating that lease. Ex. 1 at PDF pg. 5.

[5] The approved drilling permits are on leases UTU-93656 and UTU-93659.

doing so); that is, the lease suspensions did not prohibit development. *See* Pl. Resp. to Mots. to Dismiss at 7-8 (discussing AEC's Drumlin Project); Hr'g Tr. 13:1 – 13:19 (Jan. 16, 2025) (explaining that AEC has submitted thirty APDs on leases subject to the supplemental NEPA analysis and BLM is moving forward with authorizations).

The Court held oral argument on AEC's Motion to Dismiss on January 16, 2025. On January 17, AEC filed a Notice of Supplemental Authority ("EIS Notice") (ECF No. 70) informing the Court that on January 16, 2025 BLM had published a Notice of "Intent to Prepare an Environmental Impact Statement for the Oil and Gas Leasing Decisions in Seven States From February 2015 to December 2020." SUWA filed a Response to the EIS Notice (ECF No. 71).

## II.  SUWA's January 30, 2025 Notice of Supplemental Authority: BLM Approval of AEC's Drumlin Project

On January 30, 2025, SUWA filed a Notice of Supplemental Authority ("Drumlin Notice") (ECF No. 72) informing the Court that earlier the same day BLM issued a decision approving AEC's request to drill eight wells for the Drumlin Project. SUWA explained that the Drumlin Project is the same project SUWA highlighted in its Response to AEC's Motion to Dismiss and discussed at the January 16, 2025 hearing. Drumlin Notice at 2. More importantly, SUWA explained that BLM's approval of the Drumlin Project demonstrated the ripeness and real-world harm to SUWA's interests: BLM's authorization allows AEC to begin drilling on some of the leases at issue in this case <u>even though</u> the supplemental NEPA analysis referenced in the EIS Notice is still pending. *Id.*

Neither the Federal Defendants nor the Intervenor-Defendants filed a response to the Drumlin Notice. Critically, the Court did not acknowledge or address the Drumlin Notice in the Dismissal Order and instead inaccurately concluded that no drilling permits had been approved.

4

*See* Dismissal Order at 8 (describing the EIS Notice and SUWA's response to it, but making no mention of the Drumlin Notice); *id.* at 18 (inaccurately stating "[i]t is undisputed that BLM has not yet issued any drilling permits.").

## ARGUMENT

**The Court Should Alter or Amend its Judgment to Find SUWA's Claims Ripe**

Federal Rules of Civil Procedure 59(e) and 60(b) permit the Court to alter or amend a prior judgment. Also known as a motion for reconsideration, a Rule 59(e) motion allows a party to "request[] a substantive change in the district court's judgment or otherwise question[] its substantive correctness." *Nelson v. City of Albuquerque*, 921 F.3d 925, 928 (10th Cir. 2019) (quoting *Yost v. Stout*, 607 F.3d 1239, 1243 (10th Cir. 2010)). The motion must be filed within "28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Grounds warranting a motion to alter or amend the judgment pursuant to Rule 59(e) 'include…the need to correct clear error or prevent manifest injustice.'"[6] *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). An error is clear when "the court's finding 'is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made.'" *Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1263 (10th Cir. 2008) (quoting *Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1274 (10th Cir. 2001)). "Thus, a motion for

---

[6] Manifest injustice is a narrow legal standard that is defined as "an error by the court that is direct, obvious, and observable." *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-CV-2528, 2010 U.S. Dist. LEXIS 71374, *8 (D. Colo. July 15, 2010). It typically only arises when settled, reasonably relied upon expectations are disrupted and result in a "fundamentally unfair" outcome "in light of governing law." *Slate v. Am. Broad. Companies, Inc.*, 12 F. Supp. 3d 30, 35 (D.D.C. 2013); *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540 (D.C. Cir. 2007); *Cracraft v. Utah Valley Univ.*, No. 2:19-CV-397-TC, 2021 WL 872290, *3 (D. Utah Mar. 9, 2021).

reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id*. (quoting *Does*, 204 F.3d at 1012) (emphasis added).

Similarly, Rule 60 allows a motion for reconsideration for any reason that justifies relief. Fed. R. Civ. P. 60(b)(6). "Rule 60(b)(6) has been referred to as a 'grand reservoir of equitable power to do justice in a particular case.'" *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006) (citing *Pelican Prod. Co. v. Marino,* 893 F.2d 1143, 1147 (10th Cir. 1990) (additional citations omitted). Although reserved for "extraordinary" and "exceptional circumstances" Rule 60(b)(6) "'should be liberally construed when substantial justice will thus be served.'" *Id.* (quoting *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975)).

In its Dismissal Order, the Court relied on two demonstrably incorrect factual premises to conclude that SUWA's claims were not ripe.

## I.     Nearly Half of the Challenged Leases Are Not Suspended

*First*, the Court assumed that <u>all</u> of the leases at issue in this litigation are suspended, pending the outcome of the BLM's supplemental NEPA analysis resulting from settlements in the *WildEarth Guardians* line of cases. Dismissal Order at 6 ("The BLM also agreed to suspend its oil and gas leases as a condition of settlement of similar lawsuits brought by WildEarth Guardians.…Consistent with the WEG settlement, the BLM is conducting ongoing supplemental NEPA analyses of its leasing decisions"); *id.* at 15 ("the BLM leases are currently—and have been for nearly three years—suspended"). Consequently, the Court viewed the instant case as analogous to *Southern Utah Wilderness Alliance v. Palma*, which held that a suspended lease is an "interim decision," and therefore unripe for judicial review. 707 F.3d 1143, 1157 (10th Cir. 2013); Dismissal Order at 16.

<u>This is both factually incorrect and an inapt comparison.</u> BLM did <u>not</u> suspend any oil and gas leases as part of the *WildEarth Guardians* settlement agreement. *See* ECF No. 64-2 (no clause agreeing to suspend any lease). To the contrary, it was <u>AEC</u> who subsequently requested that BLM suspend a <u>subpart of the company's leases</u> to preserve its right to develop them. Pl. Resp. to Mots. to Dismiss Ex. 4 at 1 (ECF No. 64-4). Other lessees in this case, such as Bissell Oil Operating Company ("Bissell"), did not request that its leases be suspended and as such, they remain active. *See* Pl. Resp. to Mots. to Dismiss at 12; Ex. 1 at PDF pg. 279, 281 283, 285 (serial register pages for Bissell's leases at issue in this litigation). And, as explained above, only 53 of the challenged leases are suspended and AEC holds eleven leases that are not suspended.

The Court's conclusion that SUWA's claims are unripe was based on the inaccurate assumption that all of the leases are suspended and does not address the ripeness of SUWA's claims with regard to the reality of the situation – that forty-six of the leases (nearly half of the remaining leases) are <u>not</u> suspended but are instead authorized and active.

## II.    BLM Approved Drilling Permits on Leases in this Litigation

*Second*, the Dismissal Order incorrectly states that all of AEC's APDs remain pending and that "[t]here is simply too much uncertainty about when and what type of drilling, if any, will occur on the land covered by the now-suspended leases." *See* Dismissal Order at 7 ("All fourteen of AEC's ADPs [sic] remain pending");[7] *id.* at 18-19 ("It is undisputed that BLM has

---

[7] At the time SUWA filed its Response, AEC had submitted fourteen APDs on leases at issue in this litigation. However, as of the date of the hearing, January 16, 2025, that number had increased to thirty APDs. Hr'g Tr. at 12:4 – 12:9. Of those thirty APDs, four are now approved as part of the Drumlin Project.

7

not yet issued any drilling permits" and "lessees, including AEC, cannot presently drill"). This is factually inaccurate.

As explained above, not only are many of the leases at issue in this case not suspended but three days before the Court issued the Dismissal Order, on January 30, 2025, SUWA filed the Drumlin Notice informing the Court that BLM had approved AEC's drilling permits on suspended leases at issue in this litigation and was authorized to begin drilling. *See generally* Drumlin Notice.[8] Therefore, at the time the Court issued its Dismissal Order, it was no longer accurate to state that all of AEC's APDs remained pending and that there was "uncertainty" about whether BLM would approve the drilling permits. The Court's reliance on this statement as an integral aspect to its reasoning that SUWA's claims are unripe constitutes clear error.

Consequently, the Court improperly relied on *Palma* to conclude that "[j]udicial action would…be premature because there has not been a consummation of BLM's decision-making process." Dismissal Order at 16. To the extent the Court believes APDs cannot be approved on suspended leases, that is incorrect, as demonstrated by BLM's approval of the Drumlin APDs, which involve leases UTU-93656 and UTU-93659 (which were suspended at the time of BLM's drilling authorization). *See* Ex. 1 at PDF pg. 2. Contrary to the circumstances in *Palma*, the

---

[8] The Dismissal Order also incorrectly states that "SUWA concedes that drilling cannot occur until the BLM concludes its NEPA [a]nalysis and reinstates the leases." Dismissal Order at 18 (citing Pl. Resp. to Mots. to Dismiss at 8). To the contrary, SUWA has maintained throughout this litigation that drilling can occur once BLM has approved an APD on a challenged lease even if the supplemental NEPA analysis is still pending. *See* Hr'g Tr. at 13:9 – 13:19 ("[A]s we noted, the BLM is not waiting to approve these permits until after it has completed the supplemental analysis. To the contrary, they're moving forward with authorization of drilling permits while that supplemental NEPA remains ongoing."); Pl. Resp. to Mots. to Dismiss at 8 (explaining that once BLM has finalized its NEPA analysis for the Drumlin Project, it may approve the APDs and AEC would be authorized to begin drilling).

Drumlin Project APD approvals—unlike a lease suspension decision—are not "interim" decisions made "as part of the process of deciding whether to grant [AEC's] applications [to drill on its] leases." *Palma*, 707 F.3d at 1159. Rather, the APD approvals mark the "consummation of BLM's decisionmaking process" pertaining to AEC's APDs and represent BLM's final decision to allow AEC to drill on its leases. *Cf. id.* Further, as discussed *supra*, many of the challenged leases, including eleven held by AEC, are <u>not</u> suspended so *Palma* is also distinguishable on that fact. The Court's application of *Palma* to support its finding that SUWA's claims are unripe is therefore misplaced.

*** 

The factual errors described above plainly fall into the circumstances identified by the Tenth Circuit for granting a motion to alter or amend a judgment. Specifically, the Court's incorrect conclusion that all of the challenged leases are suspended "misapprehend[s] the facts" in a substantial way because the Court, relying on *Palma*, concluded that judicial review of suspended leases is not ripe. *Alpenglow Botanicals*, 894 F.3d at 1203; Dismissal Order at 16. This conclusion did not grapple with the fact that forty-six of the challenged leases are fully authorized and active. Similarly, SUWA's Drumlin Notice provided the court with new information that materially changed facts in which the Court relied in its Dismissal Order. *Alpenglow Botanicals*, 894 F.3d at 1203; Dismissal Order at 18. The Dismissal Order did not consider the ripeness of SUWA's claims in light of approved APDs on suspended leases, even though that was the status quo at the time the Dismissal Order was issued.

Individually and collectively, these misunderstandings represent "clear error" that must be corrected to "prevent manifest injustice." *Alpenglow Botanicals*, 894 F.3d at 1203. Had the

Court understood that nearly half of the challenged leases are not suspended, including leases held by AEC, and taken into account the fact that AEC has approved drilling permits on challenged leases (thus full authorization to begin drilling), it is unlikely that it would have dismissed SUWA's complaint as unripe. This motion to amend or alter judgment is the proper vehicle for SUWA to seek—and the Court to grant—relief from this decision that is fair and equitable.

## CONCLUSION

For the foregoing reasons, the Court should grant SUWA's Motion to Alter or Amend the February 4, 2025 Dismissal Order and conclude that SUWA's claims are ripe for judicial review.

Respectfully submitted February 25, 2025.

*/s/ Hanna Larsen*
Hanna Larsen
Stephen H.M. Bloch
Landon Newell

*Attorneys for Plaintiff Southern Utah Wilderness Alliance*