Mark D. Gibson (*pro hac vice*)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Telephone: (303) 473-4837
mdgibson@hollandhart.com

Andrew C. Lillie (*pro hac vice*)
Jason A. Pedraza *(pro hac vice)*
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8121
aclillie@hollandhart.com
japedraza@hollandhart.com

Shawn T. Welch (7113)
Andrew P. Revelle (18518)
HOLLAND & HART LLP
222 South Main, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
stwelch@hollandhart.com
aprevelle@hollandhart.com

*Attorneys for Intervenor–Defendant Anschutz Exploration Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR et al.,<br><br>    Defendants,<br><br>and,<br><br>ANSCHUTZ EXPLORATION CORPORATION and STATE OF UTAH,<br><br>    Intervenor–Defendants. | **ANSCHUTZ EXPLORATION CORPORATION'S RESPONSE TO PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**<br><br>Case No. 2:23-cv-00804-TC-DBP<br><br>Judge Tena Campbell<br><br>Chief Magistrate Judge Dustin B. Pead |

The Court should deny the Southern Utah Wilderness Alliance's motion to alter or amend the Court's judgment. The Court dismissed this case as unripe—and it remains so. The Alliance's last-ditch effort to save its challenge to these lease sales and leases fails because the factual errors in the Court's order that the Alliance highlights do not make a difference. That some of the challenged leases are not suspended, and that the Bureau of Land Management has approved some applications for permits to drill ("APDs"), does not alter the one fundamental fact justifying the Court's conclusion: BLM has not reached its final decision on whether to uphold, modify, or cancel the leases that the Alliance challenges. AEC has always maintained—and it remains so—that BLM's issuance of an APD is a final, discrete agency action that the Alliance may separately challenge. Simply put, the Alliance has a remedy for its current problem—to challenge BLM's permitting decisions. And it has already begun to do just that. It submitted a request for state-director review. But this Court's dismissal of the Alliance's claims challenging the leases should remain undisturbed until BLM reaches its final decision on whether those leases will continue to exist.

## BACKGROUND

The Alliance challenged BLM's sale of 145 federal oil-and-gas leases in Utah in 2018 and 2019, asserting that the leasing decisions violated the National Environmental Policy Act and the Endangered Species Act. Dismissal Order at 4, ECF No. 73. AEC holds 64 challenged leases.[1] It moved to dismiss the Alliance's claims for lack of subject-matter jurisdiction, explaining that the claims are not ripe and that the Alliance lacks standing. *See generally*, Mot. to Dismiss, ECF No. 42. The Court agreed and dismissed the case as unripe. Dismissal Order at 19. Now, the Alliance

---

[1] AEC originally held only 54 challenged leases but later acquired 10 more. AEC now holds 64 challenged leases.

has asked the Court to reconsider its dismissal based on two factual errors that the Alliance says make its claims ripe after all.

## LEGAL STANDARD

"[O]nce the district court enters judgment, the public gains a strong interest in protecting the finality of judgments." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019). That is why "a motion for reconsideration is an extreme remedy to be granted in rare circumstances." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995); *see also Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006) (relief under Rule 60(b) is extraordinary and is granted only in exceptional circumstances). In exercising its discretion, a district "court[] consider[s] whether there has been an intervening change in the law, new evidence, or the need to correct clear error or to prevent manifest injustice." *Brumark*, 57 F.3d at 944; *see also King v. IC Grp.*, 743 F. Supp. 3d 1346, 1351 (D. Utah 2024) (explaining that, regardless of the specific rule applied, "the basic assessment" tends to be the same, turning on whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error (quoting *Spring Creek Expl. & Prod. Co. v. Hess Bakken Invs. II, LLC*, 887 F.3d 1003, 1025 (10th Cir. 2018))).

Clear error and manifest injustice are high bars. For clear error, the Court must be left with "the definite and firm conviction that a mistake has been committed based on the entire evidence, or that a particular factual determination lacks any basis in the record." *King*, 743 F. Supp. 3d at 1352. Under Rule 59(e), "manifest injustice is an exceptionally narrow concept … defined as an error by the court that is direct, obvious, and observable." *U.S. Commodity Futures Trading Comm'n v. Gramalegui*, No. 15-cv-2313, 2018 U.S. Dist. LEXIS 244999, at *2–3 (D. Colo. Dec. 21, 2018) (citations and internal quotation marks omitted). "Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from

the case is apparent to the point of being indisputable." *Tri-State Truck Ins. v. First Nat'l Bank of Wamego*, No. 09-4158-SAC, 2011 U.S. Dist. LEXIS 116229, at *8 (D. Kan. Oct. 6, 2011) (internal quotation marks omitted) (quoting *Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed.Cl. 27, 31 (2007)). Moreover, "[m]anifest injustice does not result merely because a harm may go unremedied." *Gramalegui*, 2018 U.S. Dist. LEXIS 244999, at *2.

Particularly important here, "purported factual errors do not justify relief under any of the provisions in Rule 59(e) or 60(b)" unless the Court "find[s] these factual disputes to be material" in that they would change the outcome. *Craddock v. County of Macomb*, No. 21-cv-12827, 2024 U.S. Dist. LEXIS 93667, at *4 (E.D. Mich. May 24, 2024). In other words, "a movant must demonstrate that the [c]ourt overlooked facts or case law that would have reasonably changed the outcome of the original order." *Alvarez v. United States*, No. 97-CV-2852, 2016 U.S. Dist. LEXIS 189803, at *9 (E.D.N.Y. Aug. 8, 2016). If the purported factual error would not change the outcome, then the Court should deny the motion for reconsideration. *See, e.g.*, *Cook v. United States*, No. 16-cv-1656, 2019 U.S. Dist. LEXIS 113545, at *3 (N.D. Tex. June 17) (recommending denial of motion for reconsideration under Rules 59 and 60 because, although the court misstated a fact, the error was immaterial and the judgment was nevertheless correct), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 113074 (N.D. Tex. July 8, 2019); *Haulmark v. Kansas*, No. 20-CV-04084, 2021 U.S. Dist. LEXIS 230591, at *3 (D. Kan. Dec. 2, 2021) (Rule 59 movant "fail[ed] to provide any basis in law upon which the Court could overturn its prior decision").

# ARGUMENT

**The Court correctly concluded that the Alliance's claims are not ripe, because the factual errors highlighted by the Alliance do not change the reality that BLM has not yet reached a final decision on the leases that the Alliance challenges.**

The Alliance's motion rests on two factual misstatements in the Court's dismissal order: (1) that all 145 leases that the Alliance challenges are suspended, Dismissal Order at 15; and (2) that "BLM has not yet issued any drilling permits," *id.* at 18. As the Alliance correctly points out, (1) some challenged leases are not suspended, Mot. at 6–7, ECF No. 78; and (2) BLM has issued some APDs to AEC, *id.* at 7–9; *see also* Pl.'s Notice of Suppl. Authority, ECF No. 72 (noting that BLM issued APDs for the Drumlin Well Pad Project to AEC). But these factual errors are immaterial to and do not undermine the Court's determination that the Alliance's challenge to the leases are unripe because BLM has not yet reached its final decision about those leases.

That some leases are not suspended, and that BLM has issued some APDs on a few leases, merely illustrates a point that AEC has never disputed: BLM's initial leasing decisions created rights and obligations between AEC and BLM. The problem for the Alliance, however, is that this is only half of the *Bennett v. Spear* test, which the Court employed, to determine whether final agency action exists. *See* Dismissal Order at 15.

> [T]wo conditions must be satisfied for agency action to be "final": First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (emphasis added) (internal quotation marks and citations omitted). As the Court rightly noted in its dismissal order, "[T]he absence of final agency action is [case] dispositive." Dismissal Order at 14 (quoting *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1065 (10th Cir. 2012)). To establish the first element of the *Bennett v.*

*Spear* test, the Court explained, the Alliance had to carry the burden "to establish that a case is 'ripe' for judicial review [by] show[ing] that the agency has made a 'final' decision not subject to change." *Id.* at 13 (citing *Los Alamos Study Grp.*, 692 F.3d at 1065).

That much the Alliance failed to do. Acknowledging the two misstatements in the Court's order does not change that. The fact remains that BLM's decision-making process is ongoing and that its leasing decisions are subject to change. Throughout this litigation, the Alliance has continued to neglect the first element under *Bennett v. Spear*—a condition that is still missing here. The agency actions under review—BLM's decisions to offer the challenged leases for development—must mark the consummation of the agency's decision-making process. But there is no dispute that BLM's decision-making process is ongoing and evolving as reflected in its recent notice that it intends to produce a full-blown Environmental Impact Statement ("EIS") to re-evaluate whether to offer the challenged leases. *See* Dismissal Order at 8 (citing AEC's Notice of Suppl. Authority, ECF No. 70). As the Court rightly stressed in its order, "The EIS Notice confirms that the BLM may affirm, modify, or cancel its leases at the conclusion of its administrative process." *Id.*; *see also id.* at 16 (citing *Los Alamos Study Grp.*, 692 F.3d at 1065 (finding decision-making process was ongoing, tentative, and interlocutory because the environmental analysis process was "still open to public participation and it was unclear what form [the decision] would take")). As the Court reasoned, BLM's "active reconsideration of its leases mean[s] that its decision is not yet 'final.'" *Id.* at 17 (citing *Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d 1244, 1251 (10th Cir. 2001) (agency action not "final" within meaning of APA where Forest Service was actively considering the plaintiff's proposed course of action)).

BLM's issuance of the APDs hasn't changed anything about the facts and claims in this case about the leases. The underlying leases are still in a state of flux and may or may not exist in the

future. As a result, the Alliance's claims challenging the leases are not ripe, because they depend on contingent future events that may not occur as anticipated or at all. Because the factual errors the Alliance raises would not change the outcome of the case, they are immaterial, and the extraordinary remedy of reconsideration is not warranted. *See Craddock*, 2024 U.S. Dist. LEXIS 93667, at *4; *Alvarez*, 2016 U.S. Dist. LEXIS 189803, at *9; *Cook*, 2019 U.S. Dist. LEXIS 113545, at *3; *Haulmark*, 2021 U.S. Dist. LEXIS 230591, at *3.

The Alliance contends that "the APD approvals mark the 'consummation of BLM's decisionmaking process' pertaining to AEC's APDs and represent BLM's final decision to allow AEC to drill on its leases." Mot. at 9 (citing *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1159 (10th Cir. 2013)). But that contention only supports what AEC has been saying all along: the APDs—not the leases tied up in legal limbo based on BLM's ongoing supplemental NEPA analysis—are distinct final and discrete agency actions that the Alliance is free to separately challenge. *See* Ex. A (Environmental Assessment for the Drumlin Project); Ex. B (Finding of No Significant Impact for Drumlin Project); Ex. C (Decision Record for Drumlin Project). So if the Alliance wishes to challenge the permits, it can do so. But this case—raising a challenge to the underlying leases when the fate of those leases remains unsettled and on review before BLM—remains unripe. *See Palma*, 707 F.3d at 1160 (holding that the Alliance's challenge to oil-and-gas leases was unripe because, just as here, it could challenge a specific drilling permit once issued and thus it would suffer no hardship from delayed review of its lease challenge).

Indeed, the Alliance is doing just that. It submitted comments opposing AEC's Drumlin Project, Ex. D, and has now sought to challenge the Drumlin Project and the associated APDs by submitting a request for state-director review, which is now pending, Ex. E. AEC has sought to intervene in that proceeding. Ex. F. And the Alliance has suggested that it intends to seek further

review before the Department of Interior's Interior Board of Land Appeals. Ex. G. All of this simply reinforces the point that AEC has previously made: although the Alliance's challenge to the leases is not ripe, because BLM has not reached its final decision on those, that determination hardly leaves the Alliance out in the cold. The Alliance has a remedy to challenge BLM's permitting decisions. It is already doing so.

In short, BLM's approving the Drumlin Project shows that BLM's initial leasing decisions created rights and obligations. But this development does nothing to help the Alliance on the first element under the *Bennett v. Spear* test. "[T]wo conditions must be satisfied for agency action to be 'final.'" *Bennett*, 520 U.S. at 177. The Alliance gets only halfway there. Because BLM's decision-making process is ongoing, the challenged leases are not final and hence not ripe for review. *See* Dismissal Order at 14 ("BLM's decision is, at this stage[,] 'non-final.'").

The Court's dismissal order got it right. The Court explained that the Alliance's "claim, like that of the plaintiff in *Los Alamos Study Group*, will not be ripe until the conclusion of the agency's supplemental EIS." *Id.* at 18. Dead on. The Court also cited well-founded prudential concerns about disrupting the ongoing administrative process and hampering the efficiency of BLM's environmental analysis. *Id.* (citing *Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1234–35 (10th Cir. 2013); *Coal. for Sustainable Res.*, 259 F.3d at 1253 ("[R]esolution at this time would likely impede rather than promote an effective conservation program.")). Finally, the Court didn't leave the Alliance without an avenue for relief; the Alliance "will have ample opportunity later to bring its legal challenge" once "BLM decides to uphold some or all the leases after it has completed its NEPA analysis and supplemental EIS." Dismissal Order at 19 (citation omitted). And in the meantime, the Alliance can continue to pursue its current challenge to the APDs.

## CONCLUSION

The Court should deny the Alliance's motion because its claims challenging BLM's leasing decisions remain unripe for review.

Respectfully submitted,

/s/ Mark D. Gibson
Mark D. Gibson
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80303
Phone: (303) 473-4837
Email: mdgibson@hollandhart.com

*Attorney for Intervenor–Defendant Anschutz Exploration Corporation*