# EXHIBIT C

# UNITED STATES DEPARTMENT OF THE INTERIOR BUREAU OF LAND MANAGEMENT

## DECISION RECORD

## ENVIRONMENTAL ASSESSMENT ANSCHUTZ PROPOSES THE DRUMLIN PAD

DOI-BLM-UT-G010-2023-0064-EA

January 2025

Location:
Sections 30, T10S, R24E, S.L.B.&M.
Uintah County, Utah

Applicant and Address
Anschutz Exploration Corporation
555 17th Street Suite 2400
Denver, CO 80202

Vernal Field Office
170 South 500 East
Vernal, Utah 84078
435-781-4425
435-781-4499 (Fax)



# ENVIRONMENTAL ASSESSMENT
# ANSCHUTZ PROPOSES THE DRUMLIN PAD

DOI-BLM-UT-G010-2024-0064-EA

## DECISION

Considering CEQ regulations[2], 40 CFR 1501.3 (*Determine the Appropriate Level NEPA Review*), and 40 CFR 1501.6 (*Finding of No Significant Impact*), it is my decision to authorize the Drumlin Project as described in the Environmental Assessment DOI-BLM-UT-G010-2024-0064-EA.

The following factors were considered before making this decision. The analysis contained in DOI-BLM-UT-G010-2024-0064 EA were carefully considered and evaluated. All the proposed mitigation information contained in the EA, including the applicant committed measures were weighed in determining the appropriateness of the decision stated above.

## APPLICANT COMMITTED MEASURES

The decision is contingent on meeting the conditions of approval listed below, which were designed to minimize or avoid impacts.

Applicant Committed Measures

- To minimize erosion, the applicant would reinforce the north and west sides of the proposed pad with rock or jersey barriers to protect the topsoil piles and pad during precipitation events with high water and potential flooding.
- To minimize dust, the applicant in the second phase of drilling would apply magnesium chloride, or a similar product, to the running surface of the roads.
- To minimize noise impacts, the applicant would ensure that all engines would have an operational muffler system. The decibel level would not exceed seventy (70) decibels at a distance of 200 feet from the exhaust of any muffler.
- To minimize visual impacts, the applicant would paint permanent above ground structures, not subject to safety considerations, Carlsbad Canyon.
- To minimize impacts to Asphalt Wash, the Utah Gas Corporation would follow the standards stated in BLM Technical Note 423 Hydraulic Consideration for Pipelines Crossing Stream Channels.

---

[2] The BLM is aware of the November 12, 2024 decision in Marin Audubon Society v. Federal Aviation Administration, No. 23-1067 (D.C. Cir. Nov. 12, 2024). To the extent that a court may conclude that the Council on Environmental Quality (CEQ) regulations implementing NEPA are not judicially enforceable or binding on this agency action, the BLM has nonetheless elected to follow those regulations at 40 C.F.R. Parts 1500– 1508, in addition to the DOI's procedures/regulations implementing NEPA at 43 CFR Part 46, to meet the agency's obligations under NEPA, 42 U.S.C. §§ 4321 et seq.

## CONDITIONS OF APPROVAL/STIPULATIONS

The decision is contingent on meeting the conditions of approval listed below, which were designed to minimize or avoid impacts.

Air Quality Measures
- All internal combustion equipment would be kept in good working order.
- Water or other approved dust suppressants would be used, as determined appropriate by the Authorized Officer.
    - A combination of dust control techniques (e.g., chemical stabilizers and reducing vehicle speed to 25 miles per hour or less on unpaved roads (WRAP 2006)) with a combined proven control efficiency of at least 84% would be used on public dirt roads used to access the well pad during phase two of development.
- Open burning of garbage or refuse would not occur at well sites or other facilities.
- Drill rigs would be equipped with Tier II or better diesel engines.
- Telemetry would be installed to remotely monitor and control production.
- All new and replacement internal combustion gas field engines of less than or equal to 300 design-rated horsepower must not emit more than 2 grams of $NO_x$ per horsepower-hour. This requirement does not apply to gas field engines of less than or equal to 40 design-rated horsepower-hour.
- All new and replacement internal combustion gas field engines of greater than 300 design rated horsepower must not emit more than 1.0 grams of $NO_x$ per horsepower-hour.
- The operator would not increase annual development on the well pad above what has been evaluated for general conformity purposes (four wells per year max).

Wildlife Measures
- To protect migratory birds during the breeding season, USFWS Utah Field Office recommends a minimum timing restriction of April 1 to July 15 for ground-disturbing activities including habitat removal by clearing or cutting of vegetation (USFWS, 2020). If construction involving ground disturbing activities using heavy equipment is scheduled to start during the migratory bird nesting season between April 1 and July 15, a site-specific survey for migratory bird nests should be performed 7 to 10 days before project commencement to inventory any nesting activity. Any documented active nests sites would be avoided by a 100-foot buffer. The survey may be performed by a BLM biologist, or another biologist approved by the authorized officer.
- If construction were initiated during the nesting season between January 1 and September 31, a survey would be conducted within one mile of the project location prior to construction to identify raptor nests and their activity. The survey would be conducted by a BLM biologist or another biologist approved by the authorized officer. If active nests are discovered, all ground-disturbing activities would cease within the species-specific buffer specified by the 2008 Vernal Field Office RMP (0.25-1 mile). Work could resume with approval of the authorized officer once the biologist determined all young had fledged.
- If construction is proposed within 0.25 mile of the great horned owl nest during the nesting season from February 1 to August 31, a survey would be conducted for portions of the project within 0.25 mile of the nest to identify activity. The survey would be

conducted by a BLM biologist or another biologist approved by the authorized officer. If the known nest is determined active, all ground-disturbing activities would cease within the 0.25 mile buffer. Work could resume with approval of the authorized officer once the biologist determined all young had fledged.
- The operator would pay the recovery program depletion fee to the USFWS.
- The operator would avoid entrainment of larval fish as follows:
    6. The best method to avoid entrainment is to pump an off-channel location – one that does not connect to the river during high spring flows. An infiltration gallery constructed in a Service approved location is best.
    7. If the pump head were located in the river channel the following stipulations would apply:
        a. Do not situate the pump in a low-flow or no no-flow area as these habitats tend to concentrate larval fishes.
        b. Limit the amount of pumping, to the greatest extent possible, from April 1 to August 31 when larval fish are most likely to be present (see above)
        c. Do not pump from 10pm to 2am.
    8. Screen all pump intakes with 3/32-inch mesh material.
    9. Approach velocities for intake structures should follow the national marine Fisheries Service's document "Fish Screen Criteria for Anadromous Salmonids". For all instream intakes, the approach velocity should not exceed 0.33 foot per second (ft/s).
    10. Report any fish impinged on the intake screen or entrained into irrigation canals to the Service (801.975.330) or the Utah Division of Wildlife Resources.

Dark Sky Measures
- All lighting on facilities would be Dark Sky-friendly to protect the night sky viewshed, unless superseded by safety needs.

## RATIONALE

The selected alternative will meet the BLM purpose to allow the lessee to develop its valid, existing federal mineral leases. The BLM need for the action is established by its responsibility under 43 CFR 3160 to provide a decision for Applications for Permit(s) to Drill on federal lands. For more information about the BLM's purpose and need, see Section 1.1 of the EA.

## PLAN CONFORMANCE AND CONSISTENCY

The selected alternative will conform with the 2008 Vernal Field Office Resource Management Plan, as amended, specifically the parameters of the Minerals and Energy Program as defined on its pages 97 to 99. For more information about Plan Conformance, see Section 1.3 of the EA.

## PUBLIC INVOLVEMENT

The BLM held a public comment period for this EA. For more information about public involvement, see Section 4.2 of the EA.

## CONSULTATION

The BLM consulted with the Ute Indian Tribe Historic Preservation Office, tribes with connections to the Uinta Basin, and the U.S. Fish and Wildlife Service regarding the effects of this project. For more information about consultation, see Section 4.1 of the EA.

## MONITORING

BLM's monitoring and compliance is defined in BLM's annual Inspection and Enforcement Strategy Instruction Memorandum. IM 2025-001.

## APPEAL

This decision is effective upon the date it is signed by the authorized officer. The decision is subject to appeal. Under BLM regulation, the Applications for Permit to Drill in this decision are subject to administrative review in accordance with 43 CFR 3165. Any request for administrative review of this decision must include information required under 43 CFR 3165.3(b) (State Director Review), including all supporting documentation. Such a request must be filed in writing with the State Director, Bureau of Land Management, Utah State Office, 440 West 200 South, Suite 500, Salt Lake City, Utah, 84101 within 20 business days of the date this Decision is received or considered to have been received.

If you wish to file a petition for stay, the petition for stay should accompany your notice of appeal and shall show sufficient justification based on the following standards:

1. The relative harm to the parties if the stay is granted or denied.
2. The likelihood of the appellant's success on the merits.
3. The likelihood of irreparable harm to the appellant or resources if the stay is not granted.
4. Whether the public interest favors granting the stay.

Under BLM regulation, the rights of way in this decision may be appealed to the Interior Board of Land Appeals, Office of the Secretary, in accordance with the regulations contained in 43 CFR, Part 4 and the enclosed Form 1842-1. If an appeal is taken, your notice of appeal must be filed in this office (at the above address) within 30 days from receipt of this decision. The appellant has the burden of showing that the decision appealed from is in error.

If you wish to file a petition pursuant to regulation 43 CFR 2801.10 or RE CFR 2881.10 for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Board, the petition for a stay must accompany your notice or appeal. A petition for a stay is required to show sufficient justification based on the standards listed below.

Copies of the notice of appeal and petition for a stay must also be submitted to each party named in this decision and to the Interior Board of Land Appeals and to the appropriate Office of the Solicitor (see CFR 4.413) at the same time the original documents are filed with this office. If you request a stay, you have the burden of proof to demonstrate that a stay should be granted.

(1) The relative harm to the parties if the stay is granted or denied
(2) The likelihood of the appellant's success on the merits
(3) The likelihood of immediate and irreparable harm if the stay is not granted, and

(4) Whether the public interest favors granting the stay
If you appeal this decision, please provide this office with a copy of your Statement of Reasons.

AUTHORIZED OFFICER SIGNATURE AND DATE



GERALD KENCZKA   Digitally signed by GERALD KENCZKA
Date: 2025.01.30 10:35:02 -07'00'