# EXHIBIT F



**Tina R. Van Bockern**
**Phone** 303.295.8107
trvanbockern@hollandhart.com

February 27, 2025

**VIA E-MAIL & OVERNIGHT DELIVERY**

Matt Preston, Acting State Director
Bureau of Land Management
Utah State Office
440 West 200 South, Ste. 500
Salt Lake City, UT 84101
blm_ut_state_director@blm.gov

Re:   Request To Intervene in Southern Utah Wilderness Alliance's and Living Colorado Riverkeeper's State Director Review of the Drumlin Well Pad Project

Dear Mr. Preston:

On February 14, 2024, the Southern Utah Wilderness Alliance and the Living Colorado Riverkeepers (collectively, "Alliance") filed a request for State Director Review to seek immediate review of the Bureau of Land Management ("BLM") Vernal Field Office's Environmental Assessment ("EA"), Finding of No Significant Impact ("FONSI"), and Decision Record for the Drumlin Well Pad Project, DOI-BLM-UT-G010-2024-00540-EA ("Drumlin Project"). *See* All. Request, attached as Ex. A. The Drumlin Project approved eight applications for permits to drill ("APDs") into four leases along with a right-of-way application for a lay-flat pipeline and an upgraded gas pipeline. Anschutz Exploration Corporation ("AEC") holds those APDs and right-of-way grant.

On February 20, 2025, AEC first learned of the Alliance's request for State Director Review. The Alliance asks the State Director to remand the Field Office's decision authorizing the Drumlin Project and granting the APDs and the right-of-way. *See* Ex. A at 22. It alleges that the Field Office's decision was arbitrary and capricious, primarily because in approving the Project, the Field Office failed to analyze the Project's direct, indirect, and cumulative impacts on various resources in violation of the National Environmental Policy Act ("NEPA"). *Id.* at 6–16.

In seeking to remand AEC's approved APDs and right-of-way grant, the Alliance, in effect, asks the Director to set aside AEC's property and contractual interest. It is AEC—not the Alliance—that would be most directly and adversely affected by the State Director's decision to remand the Vernal Field Office's approval of the Drumlin Project. For that reason, AEC respectfully requests that the Director allow AEC to intervene and fully participate in the State Director Review proceedings so that AEC can respond to the Alliance's allegations, attend any oral presentation, if held, and ensure that the Director has all relevant facts and perspectives before coming to a decision.

**Location**
555 17th Street, Suite 3200
Denver, CO 80202-3921

**Mailing Address**
P.O. Box 8749
Denver, CO 80201-8749

**Contact**
p: 303.295.8000 | f: 303.295.8261
www.hollandhart.com

Holland & Hart LLP  Anchorage  Aspen  Billings  Boise  Boulder  Cheyenne  Denver  Jackson Hole  Las Vegas  Reno  Salt Lake City  Santa Fe  Washington, D.C.



AEC requests that the Director grant AEC 30 days, or until March 31, to carefully review the underlying NEPA documents, respond to the Alliance's allegations, and submit any additional supporting data that may be germane to the Director's decision. *See* 43 C.F.R. § 3165.3(b) ("Upon request and showing of good cause, an extension for submitting supporting data may be granted by the State Director."). AEC also seeks the opportunity for an oral presentation, which could be conducted virtually by Teams or another virtual platform. *See id.*

I.   **Both the Department of the Interior's Practices and Common-Sense Support AEC's Intervention.**

Although no BLM or Department of the Interior regulation explicitly addresses intervention in BLM's State Director Review proceedings, the Interior Board of Land Appeals ("IBLA") "routinely grants intervention to a party receiving a favorable decision from BLM which is challenged by an adverse party." *Bear River Land & Grazing v. BLM*, 132 IBLA 110, 113 (1995); *see also WildEarth Guardians v. BLM*, 198 IBLA 13, 15 (2022) (granting an oil-and-gas development company, "the primary leaseholder in the [a]rea," intervention in a challenge to a record of decision ("ROD") approving the Monument Butte Oil and Gas Development Project); *Nev. Div. of Wildlife v. BLM*, 138 IBLA 382, 390 (1997) (holding administrative law judge erred in not granting a grazing association's motion to intervene in a matter involving changes to a resource management plan); *Kendall's Concerned Area Residents v. BLM*, 129 IBLA 130, 132 (1994) (allowing mining company to intervene in an appeal of a decision challenging approval of its plans of operations "due to its obvious interest as the proponent of the challenged plan of operations"); *The Wilderness Soc'y v. BLM*, 110 IBLA 67, 67 (1989) (similar).

Indeed, the IBLA has held that "[a]s a matter of practice … a motion to intervene should be acted upon promptly so that both the moving party and other affected parties may plan their actions based on whether the motion was granted." *Nev. Div. of Wildlife*, 138 IBLA at 391. As the IBLA has observed, any "[d]elay in ruling promptly" on a request to intervene can lead to a scenario where a party with the most at stake gets left out of potential stipulation or settlement agreements between the agency and the petitioner, thereby resulting in an undue prejudice to that stakeholder. *Id.* Such outcomes should be avoided; if timely intervention is not granted, the decision-maker can be "uninformed about the basis for dismissal or other motion concerning an appeal, and one or more parties are disadvantaged." *Id.*

Under BLM's own regulations, "[a]ny party who is adversely affected by the State Director's decision may appeal that decision to the [IBLA]." 43 C.F.R. § 3165.3(b). Undoubtedly, AEC would be most "adversely affected by the State Director's decision" because it is AEC, not the Alliance, whose permits and right-of-way grant would be set aside by a State Director ruling in favor of the Alliance. If the Alliance were to succeed in remanding or setting aside the APDs, AEC's property interests would be jeopardized, and its economic interests and investment-backed expectations in utilizing the permits and developing the underlying leases would be impaired.

There is no reason why a party in AEC's shoes—that has an "obvious interest as the proponent of the challenged plan"—should be able to intervene at the IBLA-review stage but not at the State Director Review stage. Both the IBLA and the BLM State Director are administrative entities within the Department of the Interior tasked with ensuring that agency decisions are sound



and supported by the record. While the IBLA does review decisions from several different federal agencies, the State Director's purview is limited to reviewing BLM Field Offices' decisions. That is, however, a distinction without difference. Ultimately, both entities are meant to ensure that the underlying administrative record factually and legally supports the agency decision.

Simply put, AEC has more at stake here than the Alliance does. Allowing AEC to intervene at this stage would help ensure that the administrative record is complete and that the State Director is pointed to the parts of the administrative record that support the Field Office's decision to authorize the Drumlin Project. Doing so would also ensure that the State Director is fully aware of the consequences of the agency's decision to the party that has the most to lose if the Alliance were to prevail.

## II. Judicial Decisions Support AEC's Intervention.

Court decisions are even clearer that a party in AEC's shoes has the right to intervene when its federal permits or leases are challenged. There is no reason why the State Director Review proceedings should be any different from these judicial proceedings. The same principles and rationale apply with equal force here.

The Federal Rules of Civil Procedure allow a party to intervene in a lawsuit as long as: (1) the party's motion to intervene is timely; (2) the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by existing parties. *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009). All elements are satisfied here.

### A. AEC's Intervention Is Timely.

Even though a court determines "timeliness 'in light of all of the circumstances[]' ... three non-exhaustive factors are 'particularly important: (1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants.'" *See W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (citations omitted). These factors favor AEC.

First, no significant time has elapsed between when the Alliance initiated its proceeding and when AEC filed this letter to intervene. AEC first learned of the Alliance's request for State Director Review on February 20, 2025. Within six business days, AEC has filed this letter. *See S. Utah Wilderness All. v. BLM*, 2021 U.S. Dist. LEXIS 115708, at *3–4 (D. Utah June 21, 2021) (finding movant's motion to intervene under Rule 24(a)(2) timely because it "was filed within three months of the complaint and allowing intervention will neither unduly delay nor prejudice the adjudication of the original parties' rights"). To AEC's knowledge, the State Director has issued no preliminary decisions or orders of any sort in this matter. *See S. Utah Wilderness All. v. U.S Dep't of the Interior*, No. 2:23-cv-00492-DBB-DBP, 2023 U.S. Dist. LEXIS 186747, at *3 (D. Utah, Oct. 17, 2023) (granting a movant's motion to intervene when "all the circumstances"



demonstrated "the litigation [was] in its early stages," because no scheduling order had been issued and no dispositive motion had been filed).

Second, as to the prejudice factor, AEC's intervention would not prejudice any existing party. *See W. Energy All.*, 877 F.3d at 1165 (district court properly decided a motion to intervene as timely by considering the early stages of litigation and lack of prejudice). If the State Director grants AEC's request to intervene, each party, including the Alliance, will have a full opportunity to make every possible argument moving forward and to protect its own interests. Because AEC's intervention comes before any substantive activity has occurred, no party will be required to duplicate its efforts or will suffer any other prejudice. And although the Alliance has requested that the Director issue a decision within ten business days (on or before March 3, 2025) under 43 C.F.R. § 3165.3(d), *see* Ex. A at 22, the Alliance has provided no basis as to prevent the Director from extending that decision deadline to accommodate AEC's intervention and participation. Section 3165.3(b) allows the Director to extend the time for a participating party to submit supporting data and to hold oral presentation. The Director's decision is due ten business days "after the receipt of a *complete* request for administrative review" or "after the oral presentation." *Id.* § 3165(b) (emphasis added). The review package would not be complete until after AEC is afforded adequate time to respond and present oral presentation. *See id.*

Third, as to the final timeliness factor, AEC's purpose in intervening is to protect its APDs and its right-of-way from impairment and, possibly, elimination. Denying AEC's request to intervene and participate in the State Director Review proceeding would prejudice AEC, because it is the only entity that can adequately protect its unique interests in its own development permits, investments, operations, and development plans.

**B. AEC Has a Significantly Protected Interest in the APDs at the Heart of This Proceeding.**

Courts require a proposed intervenor to "claim[] an interest relating to the property or transaction that is the subject of the action." *WildEarth Guardians*, 573 F.3d at 995. To satisfy this requirement, "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Id.* (citation omitted).

The Alliance is challenging AEC's APDs and right-of-way grant—and the property and contractual rights they embody. If the Alliance were to prevail, AEC's property and contractual rights would be impaired—or worse, cancelled. Hence, AEC's APDs are not merely "relat[ed] to the property or transaction that is the subject of the action"—they *are* the property or transaction at issue here. Fed. R. Civ. P. 24(a)(2); *see also WildEarth Guardians*, 573 F.3d at 995–96 (a proposed intervenor's mining interests had the potential to be impaired because plaintiff asked the court to "set[] aside the [federal] Defendants' decisions approving or consenting to" the movant's mine expansion). Courts have recognized that federal oil-and-gas leases and permits are binding, enforceable, contractual arrangements that govern the rights and obligations of BLM and permit holders such as AEC. *See W. Watersheds Project v. Haaland*, Nos. 20-35693, 20-35781, 2022 U.S. App. LEXIS 247, at *4–5 (9th Cir. Jan. 5, 2022) (noting that "AEC has invested tens of millions of dollars acquiring and developing the leasehold interests imperiled by this litigation, and therefore 'has a substantial due process interest in the outcome of this litigation by virtue of its



February 27, 2025
Page 5

contract' with the federal government"); *S. Utah Wilderness All.*, 2023 U.S. Dist. LEXIS 186747, at *4 (finding that proposed intervenor met its burden to show a direct and substantial interest because it owned relevant mineral leases at issue).

This element is met not only because AEC's permits might be impaired if the Alliance were to prevail, but also because that outcome would cause economic harm to AEC. Avoiding economic injury—like the economic injury that would flow from a State Director decision that, in effect, bars AEC from utilizing the APDs or developing the underlying leases—is itself a legally protected interest that warrants intervention as a matter of right. *See WildEarth Guardians*, 573 F.3d at 996; *S. Utah Wilderness All.*, 2023 U.S. Dist. LEXIS 186747, at *4 (owner of the mineral leases who had spent millions designing and planning its mining project had a "direct and substantial economic interest in the litigation"); *W. Watersheds Project v. Interior Bd. of Land Appeals*, 2019 U.S. Dist. LEXIS 179033, at *6–7 (D. Utah Oct. 15, 2019) (proposed state intervenor had a financial interest in its challenged grazing permits sufficient to warrant intervention as a matter of right). The Alliance wants the State Director to remand AEC's preapproved permits. That requested relief poses a direct and substantial economic threat to AEC. *See S. Utah Wilderness All.*, 2023 U.S. Dist. LEXIS 186747, at *4, 7 (allowing mining company with mineral leases to intervene in suit challenging BLM's NEPA compliance after issuing those permits).

In short, by asking the State Director to remand the Field Office's approval of the Drumlin Project, the Alliance effectively requests that the State Director to set aside AEC's contractual and property interests in the APDs. Because AEC has legally protected interests in the APDs and the right-of-way grant at stake here, the State Director should allow AEC to intervene to defend those interests from the Alliance's attack. *See WildEarth Guardians*, 573 F.3d at 996 (potential legal interests being challenged were mining permits, which the court deemed as "a direct economic stake in the subject of this litigation.").

**C.   The Disposition of This Case May Impair or Cancel AEC's APDs.**

AEC "is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Courts have recognized that where an agency's decision was favorable to the proposed intervenor (like AEC), and the present action is a direct attack on that decision (like this action), the present action threatens to impair the proposed intervenor's protected interests. *See S. Utah Wilderness All.*, 2023 U.S. Dist. LEXIS 186747, at *5 (proposed intervenor established having interests, i.e., mining permits, that "may be impaired by the instant action"); *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, No. 2:23-cv-00804-TC-DBP, 2024 U.S. Dist. LEXIS 85415, at *9, 12 (D. Utah May 10, 2024) (granting AEC intervention in Alliance's lawsuit challenging the sale of leases subject to the Drumlin Project). BLM's decision to grant AEC the APDs and the right-of-way grant was favorable to AEC. AEC intends to utilize those permits to responsibly produce oil and gas and to transport them through pipelines sited on the right-of-way. If the Alliance were to succeed in setting aside the permits or delaying their usage, AEC's property interests would be impaired, and its economic interests in utilizing the permits and developing the underlying leases would be jeopardized. *See S. Utah Wilderness All.*, 2023 U.S. Dist. LEXIS 186747, at *5 (allowing mining company with mineral leases to intervene in suit challenging BLM's NEPA compliance after issuing the leases).



### D. The Current Parties Do Not Adequately Represent AEC's Interests.

The final element courts evaluate is whether a proposed intervenor's interests are "adequately represent[ed]" by existing parties. Fed. R. Civ. P. 24(a)(2). They are not.

The Supreme Court has held that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Here, the BLM Field Office is the only existing party that, in theory, might adequately represent AEC's unique interests in its APDs. But caselaw forecloses that possibility. The Tenth Circuit, for example, has held that "the government cannot adequately represent the interests of a private intervenor *and* the interests of the public." *W. Energy All.*, 877 F.3d at 1168 (emphasis added); *see also WildEarth Guardians*, 573 F.3d at 997 (noting that "the federal government is inherently responsible for protecting and representing the public interest," which "inherently conflict[s] with the interests of intervening private parties"); *S. Utah Wilderness All.*, 2023 U.S. Dist. LEXIS 186747, at *6 ("Courts have recognized that 'it is "on its face impossible" for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor[.]'" (quoting *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1200 (10th Cir. 2010))). AEC is better positioned than the Field Office to explain precisely how it plans to develop the Drumlin Project, and how AEC would be harmed and its business would be disrupted were the Alliance to prevail. That AEC has narrower interests distinct from the agency's interests only underscores that AEC has met the requisite "minimal" showing under the adequate-representation element.

The Alliance also alleges that two leases on which the APDs were issued are unlawful. *See* Ex. A at 6. Although the Alliance does not directly challenge the validity of those lease sales in its request for State Director Review, the Alliance's request inevitably questions their legality. As a party holding those leases, and as a party who successfully intervened in the Alliance's lawsuit challenging those leases, *see S. Utah Wilderness All.*, 2024 U.S. Dist. LEXIS 85415, at *11–12, AEC will also be able to describe the history of litigation leading up to the Alliance's current State Director Review request and the implications of the court decisions involving those leases. No other existing party can offer AEC's perspective or is better positioned to explain the interplay of past and current court cases to the drilling permits at issue here.

Because AEC meets the judicial requirements for intervention, the State Director should grant AEC's request for intervention—like the numerous courts that have allowed AEC to intervene in similar situations where a party has challenged its APDs or leases, including those leases subject to the Drumlin Project. *See, e.g., id.* (granting AEC intervention in Alliance's lawsuit challenging leases that are subject to the Drumlin Project); Min. Order, *Powder River Basin Res. Council v. U.S. Dep't of the Interior*, No. 1:22-cv-02696-TSC (D.D.C. Jan. 17, 2023) (granting AEC's motion to intervene to defend its oil-and-gas drilling permits that the plaintiffs sought to vacate); *W. Watersheds Project*, 2022 U.S. App. LEXIS 247, at *5 (reversing district-court order denying AEC's motion to intervene); *Mont. Wildlife Fed'n v. Haaland*, No. 20-35793, 2022 U.S. App. LEXIS 239, at *1 (9th Cir. Jan. 5, 2022) (same); *Ctr. for Bio. Diversity v. U.S. Dep't of the Interior*, No. 1:22-cv-01716-TSC, slip op. at 10 (D.D.C. Nov. 9, 2022), ECF No. 75 (same); *WildEarth Guardians v. Bernhardt*, No. 1:21-cv-00175-RC, slip op. at 1–2 (D.D.C. July 14, 2021),



February 27, 2025
Page 7

ECF No. 37 (granting AEC's motion to intervene to defend some of the same leases associated with the Drumlin Project).

**III.    Conclusion.**

The State Director should allow AEC to intervene in the State Director Review proceeding brought by the Alliance so that AEC can respond to the Alliance's allegations and ensure that the Director has all relevant facts and perspectives before coming to a decision. AEC also respectfully requests an extension of 30 days, or until March 31, to submit its response to the Alliance's allegations and oral presentation.

Best regards,

Tina R. Van Bockern
Utsarga Bhattarai
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8107
trvanbockern@hollandhart.com
ubhattarai@hollandhart.com
*Attorneys for Anschutz Exploration Corporation*

cc:

Christina Price, Deputy State Director, Land & Minerals, cjprice@blm.gov
Melinda Moffitt, Litigation Coordinator, mmoffitt@blm.gov
Bureau of Land Management
Utah State Office
440 W 200 S, Suite 500
Salt Lake City, UT 84101

Jerry Kenczka, Assistant Field Manager, Land & Minerals, jkenczka@blm.gov
Bureau of Land Management
Vernal Field Office
170 South 500 East
Vernal, UT 84078

Hanna Larsen, hanna@suwa.org
Landon Newell, landon@suwa.org
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, UT 84111