Stephen H.M. Bloch (UT #7813)
Landon Newell (UT #14738)
Hanna Larsen (UT #18458)
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
(801) 486-3161
steve@suwa.org
landon@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF THE INTERIOR** *et al.*, <br><br> Defendants, <br><br> and, <br><br> **ANSCHUTZ EXPLORATION CORPORATION** and **STATE OF UTAH**, <br><br> Intervenor-Defendants. | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT** <br><br> Case No. 2:23-cv-00804-TC <br><br> Judge Tena Campbell <br><br> **HEARING REQUESTED** |

The Court's February 4, 2025 Order and Memorandum Decision to Dismiss (ECF No. 73) was premised on two material—but indisputably inaccurate—factual conclusions: (1) that all of the challenged leases were suspended and, as a result, no development could or would occur

on them unless or until the Bureau of Land Management's ("BLM") supplemental leasing analysis was finalized, and (2) that the BLM had not approved—and would not approve—drilling on the leases while the supplemental leasing analysis was pending and thus drilling was entirely too speculative at that time.

It is undisputed by the parties that these factual conclusions were inaccurate. *See* ECF No. 79 at 1 (Intervenor-Defendant Anschutz Exploration Corporation ("AEC") acknowledging that the Court's decision was based on "factual errors"); *id.* at 4 (there were "factual misstatements in the Court's dismissal order"). Specifically, and as AEC readily acknowledged: SUWA "correctly points out [that] (1) some of the challenged leases are not suspended, and (2) BLM has issued some [drilling permits] to AEC." ECF No. 79 at 4 (cleaned up).[1]

As explained herein and in SUWA's Motion and Memorandum in Support ("Motion") (ECF No. 78), the Court should grant SUWA's Motion and set aside its dismissal of this case as unripe for judicial review.

## ARGUMENT

### I.    The Court's Decision was Based on Undisputed Factual Inaccuracies

The leases at issue are not—and never were—all suspended. And with regard to the leases that are suspended, the terms of those lease suspensions do not—and never did—prevent the lessees, including AEC, from pursuing the development of their leases while the BLM prepares the supplemental leasing analysis. These facts are undisputed by the parties.

---

[1] The United States neither filed its own motion to dismiss nor joined in AEC's motion. It likewise did not file a brief in response to SUWA's Motion to Alter or Amend Judgment.

### A.     The Challenged Leases Were Never All Suspended

The Court based its decision on the incorrect assumption that <u>all</u> of the challenged leases were suspended pending the outcome of BLM's supplemental leasing analysis. *See, e.g.*, ECF No. 73 at 6 ("The BLM's lease suspensions were reinstated after changes in the regulatory landscape and lawsuits filed by several environmental organizations");[2] *id.* ("The BLM also agreed to suspend its oil and gas leases as a condition of settlement . . .");[3] *id.* at 13 ("the leases have been indeterminately suspended pending the BLM's" supplemental analysis); *id.* 15 ("Here . . . the BLM leases are currently—and have been for nearly three years—suspended"); *id.* at 17 ("the BLM's suspension . . . of its leases means that its decision is not yet 'final'"); *id.* at 18 ("There is simply too much uncertainty about when and what type of drilling, if any, will occur on the land covered by the now-suspended leases").

This assumption was integral to the Court's reasoning and ultimate decision. It was also factually inaccurate.

### B.     Lease Development Is Approved and Has Already Begun

Additionally, the Court assumed whatever suspensions existed also prohibited development of the leases while the BLM prepared its supplemental analysis. *See, e.g.*, ECF No. 73 at 19 ("The status quo, as it has stood for the last five or six years, creates no rights or obligations regarding the public lands; the lessees including AEC, cannot presently drill").

---

[2] The leases were never suspended as a result of changes in the "regulatory landscape" or lawsuits. Rather, as SUWA previously explained, some of the challenged leases were suspended after <u>AEC</u> requested a suspension so that the company could preserve its right to drill on them. *See* ECF No. 64-4 (stating that AEC requested that some of its leases be suspended).
[3] The BLM did <u>not</u> agree or commit to suspend the leases as part of the settlement agreement. *See* ECF No. 64-2 (containing no commitment to suspend the leases).

3

That is, the Court assumed that development could not occur—and had not been approved—on any of the challenged leases while the BLM prepared the supplemental leasing analysis. *See, e.g.*, ECF No. 73 at 6 ("no development is currently in progress"); *id.* at 7 ("All fourteen of AEC's ADPs [sic] remain pending"); *id.* at 13 ("with no drilling or development permits issued or on the horizon"); *id.* at 18 ("It is undisputed that BLM has not yet issued any drilling permits");[4] *id.* ("drilling cannot occur until the BLM concludes its NEPA Analysis and reinstates the leases"); *id.* ("The court cannot reasonably conclude that 'AEC will have approved APDs . . .'"); *id.* at 19 (stating that AEC "cannot presently drill" because the leases are suspended).

These assumptions were also integral to the Court's reasoning and ultimate decision. And, they were also factually inaccurate.

Not only has BLM authorized drilling, ECF No. 72, AEC is currently engaged in well pad construction and preparatory drilling operations at the Drumlin Project site. The following photographs were taken on March 4, 2025, and show AEC's ongoing development activity at the Drumlin Project site.[5]

---

[4] This was inaccurate because four days <u>before</u> the Court issued its Order and Memorandum Decision SUWA alerted the Court to BLM's approval of the Drumlin Project, which authorized drilling on two of the challenged leases. *See* ECF No. 72.
[5] *See generally*, Decl. of Ray Bloxham (attached as Ex. 1) (describing the process and procedure for taking these photographs).



Following BLM's January 30, 2025 approval of the Drumlin Project, AEC proceeded to clear two pads for drilling operations. The company has been authorized to begin drilling and intends to target two of the leases at issue in this case, as well as two other leases. (March 4, 2025)



AEC's surface disturbing activities at the Drumlin wellsite. (March 4, 2025)

Thus, the Court was wrong when it concluded that "drilling cannot occur until the BLM concludes its NEPA Analysis and reinstates the leases," ECF No. 73 at 18, and that "[t]he status quo . . . creates no rights or obligations regarding the public land: the lessees, including AEC, cannot presently drill, and SUWA's members are still able to enjoy the untouched natural environment." *Id.* at 19. To the contrary, BLM approved AEC's Drumlin Project on January 30, 2025 and the company quickly began to prepare the wellsite for drilling.

\*\*\*

In sum, it is undisputed that the Court incorrectly concluded that all of the leases were suspended, that the suspensions prohibited development, and that no drilling had been approved (or could be approved) until BLM completed its supplemental leasing analysis.

### II.     Contrary to AEC's Argument, Both *Bennett* Factors Are Met

Remarkably, despite acknowledging the above-discussed factual errors, and despite AEC having already started to develop the Drumlin Project, AEC argues that BLM's leasing decisions are somehow not final. ECF No. 79 at 4-7. AEC is wrong for at least three reasons.

*First*, the Court's decision, in effect, already rejected AEC's argument. Specifically, the Court held that SUWA's claims were unripe because "drilling cannot occur until the BLM concludes its NEPA Analysis and reinstates the leases." ECF No. 73 at 18.[6] As explained above, this conclusion is factually inaccurate. Nonetheless, the clear implication of the Court's reasoning is that <u>if drilling could occur then SUWA's lawsuit would be ripe</u>. That's true—and, not only can drilling occur, it has in fact been authorized (*e.g.*, the Drumlin Project).[7]

---

[6] Throughout its decision, the Court uses the word "reinstate" when referring to the challenged leases. The use of this terminology is problematic and appears to have caused confusion in the Court's reasoning and ultimate decision. Specifically, the challenged leases <u>cannot</u> by law be reinstated because they were never <u>terminated</u>. The Mineral Leasing Act of 1920 allows for lease "reinstatement" <u>only if</u> the underlying lease was <u>terminated</u> for non-payment, or late payment, of annual lease rentals. *See* 43 C.F.R. §§ 3108.21, 3108.22, 3108.23. Here, in contrast, the challenged leases are valid, authorized, and <u>some</u> of them are <u>suspended</u>—but, a lease suspension is <u>not</u> akin to lease termination and, importantly, suspension is <u>only</u> available for valid, authorized leases. *See id.* §§ 3103.42, 3165.1.

[7] The fact that SUWA can and is challenging the Drumlin Project in a separate action does not alter this outcome. That approach is commonplace and simply illustrates the undisputed fact that oil and gas leasing and development on public lands occurs through a three-step process, and the public can challenge each step of that process (*i.e.*, (1) land use planning, (2) leasing, and (3) drilling). *See N.M. ex rel. Richardson v. U.S. Bureau of Land Mgmt.*, 565 F.3d 683, 689 n.1 (10th Cir. 2009). The fact that SUWA is challenging one step of the process (leasing) does not foreclose its ability to challenge another (drilling), and AEC provides no support to the contrary.

*Second*, AEC's argument conveniently ignores the legal reality that in order to explore and drill for oil and gas on public lands the company must have a valid, authorized lease. *See* 43 C.F.R. § 3101.12 (the issuance of a lease grants the lessee surface use rights to "explore for, drill for . . . all of the leased resource in a leasehold"); *id.* § 3162.1(a) (the lessee "shall comply with . . . the lease terms"). Any well pad construction, exploration, and drilling on public lands that is not on an authorized lease would amount to trespass and be subject to civil and/or criminal changes and other legal consequences. *Id.* §§ 3163.2, 3163.3, 3163.4. So, AEC is either currently trespassing on public lands by developing the Drumlin Project, or they have a valid, authorized lease—here, it is the latter that is true. Thus, by acknowledging that development can occur (and is occurring) on the challenged leases, AEC concedes that the leases are valid and authorized and BLM's leasing decision is final.

*Finally*, the Court's and AEC's reliance on *SUWA v. Palma* is misplaced. In its decision, the Court reasoned that the present case was controlled by *Palma* because "the BLM leases are currently—and have been for nearly three years—suspended." ECF No. 73 at 15. And, according to the Court, "[o]n these undisputed facts, the Court finds this case is far more analogous to a nearly identical case which SUWA notably fails to distinguish, SUWA v. Palma." *Id.* at 16. However, as explained above, SUWA has always disputed this fact, *see supra* at 3 n.2, and, more importantly, the Court's reasoning is based on—undisputed—factual inaccuracies. SUWA has consistently maintained throughout this litigation that *Palma* is distinguishable for at least two reasons: (1) unlike *Palma*, the lessees, including AEC, are not "prohibit[ed] . . . from entering upon, exploring, or otherwise impacting the leaseholds while" BLM prepares the supplemental leasing analysis, as evidenced by AEC's development activity at the Drumlin Project site, *S.*

8

*Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1159-60 (10th Cir. 2013), and (2) unlike *Palma*, only <u>some</u> of the challenged leases are suspended. Thus, based on the facts as they actually are, *Palma* is easily distinguishable.

In short, BLM's challenged leasing decisions are final agency actions.

## CONCLUSION

For the foregoing reasons and those detailed in SUWA's Motion, the Court should grant SUWA's Motion and alter or amend its judgment to conclude that SUWA's claims are ripe for judicial review.

Respectfully submitted March 24, 2025.

/s/ Landon Newell
Landon Newell
Stephen H.M. Bloch
Hanna Larsen

*Attorneys for Plaintiff Southern Utah Wilderness Alliance*
